Filed 5/16/22  In re Baby Boy P. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re BABY BOY P., a Person Coming Under the Juvenile Court Law. | B315112 (Los Angeles County Super. Ct. No. 18CCJP04077) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. STEPHANIE P., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Juvenile Court Referee.  Conditionally affirmed and remanded with directions.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane E. Kwon, Deputy County Counsel, for Plaintiff and Respondent.

---

Stephanie P. (Mother) appeals from the order terminating her parental rights to 21-month-old Baby Boy P. under Welfare and Institutions Code section 366.26.[1]  Mother's sole contention on appeal is that the Los Angeles County Department of Children and Family Services (the Department) and the juvenile court failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) and related California law.

The juvenile court found ICWA did not apply as to either Mother or Father (Alfredo C.) based on the parents' denials of Indian ancestry.  However, the Department failed to inquire of any extended family members whether Baby Boy was or may be an Indian child, including the maternal grandfather, maternal aunt, and maternal uncle, each of whom was interviewed by the Department.  Nor did the Department obtain contact information from Mother and Father for other extended family members or inquire of any of Father's extended family members.  We agree with Mother that section 224.2, subdivision (b), required the Department to inquire of the maternal and paternal family

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

2

members,[2] and the juvenile court erred in finding ICWA did not apply despite the Department's insufficient inquiry. Further, the error was prejudicial because we do not know what information the relatives would have provided had the Department or court inquired. We conditionally affirm and remand for the juvenile court and the Department to comply with the inquiry provisions of ICWA and California law.

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *The Current Dependency Case*

On November 26, 2019 the Department received a referral alleging Mother gave birth to Baby Boy while she was in custody following her arrest for grand theft. According to the sheriff's deputy, Mother was on suicide watch based on her "'really bizarre'" behavior. Mother acknowledged she had been diagnosed with bipolar disorder and had used methamphetamine while she was pregnant with Baby Boy. Mother was in a relationship with Father, who was also the father of one of Mother's other children, Johnathan P. In response to the referral, the social worker went to Mother's home and spoke with the maternal aunt (Brenda P.) and maternal grandfather (Philip P.).

---

[2]   On remand the Department must make an inquiry of the relatives meeting the statutory definition of an "'extended family member,'" including Baby Boy's maternal grandfather, aunt, and uncle and the extended paternal family members. (See 25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).) Through these interviews (and further interviews of Mother and Father), the Department should determine whether there are other extended family members who need to be interviewed.

3

On December 2, 2019 the Department filed a petition on behalf of Baby Boy pursuant to section 300, subdivision (b)(1), alleging Mother had a history of substance abuse and had tested positive for methamphetamine and amphetamine in July 2019; Father failed to protect Baby Boy from Mother's substance abuse; and four of Mother's other children had been declared dependents of the juvenile court. The petition also alleged Mother had mental and emotional problems, including suicidal ideation, and she had been diagnosed with bipolar disorder, major depression, and schizophrenia, rendering her incapable of caring for Baby Boy. The petition alleged further under section 300, subdivision (j), that Johnathan was a current dependent of the juvenile court and three half-siblings, Alexis G., Bridgette M., and Xavier P. were former dependents of the juvenile court.[3]

The petition attached Judicial Council form ICWA-010, which stated an inquiry was made as to Baby Boy's ancestry and Mother had been questioned and denied any knowledge of Indian ancestry. The form did not state whether the child may have Indian ancestry.

At Mother's December 9, 2019 arraignment, Mother filed a parental notification of Indian status form (Judicial Council form ICWA-020), on which she checked the box stating, "I have no Indian ancestry as far as I know." She also noted that a previous form ICWA-020 had been filed with the court. The juvenile court[4] acknowledged that Mother filed the parental notification of

---

[3]     Adoptions have been finalized as to all four siblings and half-siblings.

[4]     Juvenile Court Referee Emma Castro presided over the case through the jurisdiction and disposition hearing.

4

Indian status form and Father had not yet appeared. The court found, "So at this time the court has no reason to know that this child is an Indian child as described by [ICWA]."

Father first appeared on February 13, 2020 and filed a parental notification of Indian status form on which he checked the box stating, "I have no Indian ancestry as far as I know." At Father's arraignment on that date, the juvenile court again found it had no reason to know Baby Boy was an Indian child under ICWA.

After Baby Boy was detained from Mother, he was placed with the family who had adopted Johnathan. On January 22, 2020 the social worker visited Mother and Father at the home of the maternal grandfather and talked to the maternal grandfather, the maternal aunt, and the maternal uncle (Phillip P.).

In its February 13, 2020 jurisdiction/disposition report, the Department reported that the juvenile court on December 9, 2019 had found it had no reason to know Baby Boy was an Indian child. The report did not reflect any inquiry of the maternal or paternal extended family members as to whether Baby Boy may be an Indian child.

At the September 1, 2020 jurisdiction and disposition hearing, the juvenile court sustained the allegations in the petition, declared Baby Boy a dependent of the juvenile court under section 300, subdivisions (b)(1) and (j), and removed him from Mother's and Father's custody. The court ordered reunification services be provided to Father, but not to Mother. The court granted Mother and Father two monitored visits each week for 30 minutes each visit. The court did not address ICWA.

5

At the 12-month review hearing, the juvenile court[5] terminated Father's reunification services.

The July 14, 2021 report for the selection and implementation hearing (§ 366.26) again reported the juvenile court's December 9, 2020 finding the court had no reason to know Baby Boy was an Indian child. The report did not reflect any inquiry of the maternal or paternal extended family member as to whether Baby Boy may be an Indian child.

On September 13, 2021 Mother filed a section 388 petition seeking family reunification services on the basis she had received additional psychotherapy and medication management services. After a hearing on September 14, 2021, the juvenile court denied Mother's petition. At the selection and implementation hearing held on the same date, the juvenile court[6] found returning Baby Boy to Mother and Father would be detrimental to the child and the child was adoptable. The court terminated Mother's and Father's parental rights. The non-related caregivers were identified as the prospective adoptive parents. The court did not make any findings as to ICWA.

Mother timely appealed from the order terminating her parental rights.[7]

---

[5]     Judge Debra L. Losnick.

[6]     Juvenile Court Referee Gabriella H. Shapiro.

[7]     Mother stated in her notice of appeal that she is also appealing from the September 14, 2021 order denying her section 388 petition requesting her reunification services be restored. However, she does not present any argument on appeal as to the section 388 petition. Father is not a party to this appeal.

B.     *ICWA Inquiry in Johnathan's Dependency Case*

At the June 29, 2018 detention hearing in Johnathan's dependency case, Mother filed a parental notification of Indian status form stating, "I have no Indian ancestry as far as I know." Father also filed a parental notification form on that date.[8]  The juvenile court found at the June 29 detention hearing, "The Court does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the [Bureau of Indian Affairs]."

## DISCUSSION

A.     *ICWA Inquiry and Notice Requirements*

ICWA provides as to dependency proceedings, "[W]here the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to . . . an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention."  (25 U.S.C. § 1912(a); see *In re Isaiah W.* (2016)

---

[8]     The Department has requested we take judicial notice of the June 29, 2018 minute order filed in Johnathan's dependency case, Los Angeles Superior Court case number 18CCJP04077A, and the parental notification of Indian status form filed by Mother on the same date.  We grant the Department's request. (Evid. Code, §§ 452, subd. (d), 459.)  The Department has not submitted or requested we take judicial notice of the parental notification of Indian status form Father filed in Johnathan's dependency case.

7

1 Cal.5th 1, 5*; In re T.G.* (2020) 58 Cal.App.5th 275, 288; *In re Elizabeth M.* (2018) 19 Cal.App.5th 768, 784.)  California law similarly requires notice to the Indian tribe and the parent, legal guardian, or Indian custodian if the court or the Department "knows or has reason to know" the proceeding concerns an Indian child.  (§ 224.3, subd. (a); see *In re T.G.*, at p. 288; *In re Elizabeth M.*, at p. 784; *In re Breanna S.* (2017) 8 Cal.App.5th 636, 649, disapproved on another ground in *In re Caden C.* (2021) 11 Cal.5th 614, 637, fn. 6; Cal. Rules of Court, rule 5.481(c)(1) [notice is required "[i]f it is known or there is reason to know an Indian child is involved in a proceeding listed in rule 5.480," which includes dependency cases filed under section 300].)  The notice requirement is at the heart of ICWA because it "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*In re Isaiah W.,* at p. 5; accord, *In re T.G.*, at p. 288; see 25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (d).)

The juvenile court and the Department "have an affirmative and continuing duty to inquire whether a child for whom a petition under Section 300 . . . may be or has been filed, is or may be an Indian child."  (§ 224.2, subd. (a); see *In re Isaiah W., supra*, 1 Cal.5th at p. 9; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429; *In re H.V.* (2022) 75 Cal.App.5th 433, 437.)  "The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 552; accord, *In re Antonio R.*, at p. 429; *In re H.V.*, at p. 437.)

"The duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective

agencies to ask all relevant involved individuals whether the child may be an Indian child.  (§ 224.2, subds. (a)-(c))."  (*In re T.G., supra*, 58 Cal.App.5th at p. 290; see *In re Antonio R., supra*, 76 Cal.App.5th at p. 429; *In re H.V., supra*, 75 Cal.App.5th at p. 437 ["[F]rom the [Department]'s initial contact with a minor and his family, [section 224.2] imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child."].)

Section 224.2, subdivision (b), effective January 1, 2019, imposes on the Department a duty to inquire whether a child in the Department's temporary custody is an Indian child, which "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ."  (§ 224.2, subd. (b); see Cal. Rules of Court, rule 5.481(a)(1) [the Department "must ask . . . extended family members . . . whether the child is or may be an Indian child"]; *In re Antonio R., supra*, 76 Cal.App.5th at p. 430; *In re Y.W., supra*, 70 Cal.App.5th at pp. 551-552.)  Under ICWA, the term "extended family member" is "defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent."  (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) ["As used in connection with an Indian child custody proceeding, the terms 'extended family member' and 'parent' shall be defined as provided in Section 1903 of the federal Indian Child Welfare Act."].)

9

B.    *The Juvenile Court Failed To Ensure the Department Complied with ICWA and Related California Law*

On appeal, Mother contends the Department should have inquired of the maternal and paternal extended family members about Baby Boy's possible Indian ancestry. We agree the Department failed to satisfy its affirmative and continuing duty of inquiry under section 224.2, subdivision (b), and we once again reject the Department's contention that inquiring of Mother and Father was sufficient.

Information relevant to Baby Boy's possible Indian ancestry was readily obtainable from several of the extended family members. In November 2019 the social worker spoke with the maternal grandfather and the maternal aunt. At Mother's arraignment on December 9, 2019 the juvenile court made a finding it had no reason to know Baby Boy was an Indian child even though no inquiry had been made at that point other than of Mother. This finding was repeated in the jurisdiction/disposition report and again in the report for the selection and implementation hearing. The court made the same finding on February 13, 2020 at Father's arraignment based on Father's denial of Indian ancestry on his parental notification of Indian status form. On January 22, 2020 the social worker again spoke with the maternal grandfather, as well as the maternal aunt and the maternal uncle. Yet the Department failed to inquire of any of these maternal relatives (or any paternal relatives) as to whether they had any information bearing on whether Baby Boy was an Indian child. Nor did the Department make any inquiry of Mother or Father as to whether there were other relatives who may have information bearing on whether Baby Boy was an Indian child. And the juvenile court failed at the September 1,

10

2020 jurisdiction and disposition hearing and the September 14, 2021 selection and implementation hearing to determine whether the Department had made an inquiry of the maternal or paternal extended family members.  Nor did the court make any findings as to whether Baby Boy was an Indian child.

Despite having multiple opportunities, the Department failed to inquire of any of these family members as to Baby Boy's possible Indian ancestry, and the court erred in failing to ensure that the Department satisfied its duty of inquiry and in finding ICWA did not apply despite the lack of an adequate inquiry.  (See *In re J.C.* (2022) 77 Cal.App.5th 70, 79 ["The juvenile court, too, did not satisfy its duty to ensure the Department adequately investigated whether J.C. may be an Indian child.  There is no indication in the record that, after the detention hearing, the juvenile court gave ICWA another thought in the almost three years of this dependency case."]; *In re Antonio R., supra*, 76 Cal.App.5th at p. 431 ["Although section 224.2, subdivision (b), places on the Department the duty to inquire, including of extended family members, section 224.2, subdivision (a), makes clear that the 'affirmative and continuing duty to inquire' whether a child is or may be an Indian child rests with both the Department *and the court*."]; see also § 224.2, subd. (i)(2) ["If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."].)

Contrary to the Department's contention, Mother was not required to make an affirmative representation that she had

Indian ancestry to prevail on appeal. We disagree with the holding in *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069 that "a parent asserting failure to inquire must show—at a minimum—that, if asked, he or she would, in good faith, have claimed some kind of Indian ancestry." We rejected this approach in *In re Y.W., supra*, 70 Cal.App.5th at page 556, explaining, "It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim." (Accord, *In re J.C., supra*, 77 Cal.App.5th at p. 80 ["where, as here, the Department's failure to conduct an adequate inquiry makes it impossible for the parent to show prejudice, we must remand for a proper inquiry"]; *In re H.V., supra*, 75 Cal.App.5th at p. 438, 442 & fn. 4 [failure to discharge initial duty of inquiry was prejudicial error because "[m]other does not have an affirmative duty to make a factual assertion on appeal that she cannot support with citations to the record" and the absence of information in the record about the child's possible Indian ancestry resulted from the Department's failure to discharge its duty of inquiry].)

Further, it is the Department, not the parents, that bears the duty to develop information whether a child is an Indian child. (*In re Antonio R., supra*, 76 Cal.App.5th at p. 430; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 742 ["the agency has a duty to gather information by conducting an initial inquiry, where the other party—here a parent . . . has no similar obligation"]; *In re K.R.* (2018) 20 Cal.App.5th 701, 706 ["The court and the agency must act upon information received from any source, not just the parent [citations], and the parent's failure to object in the juvenile court to deficiencies in the investigation or

noticing does not preclude the parent from raising the issue for the first time on appeal . . . ."].)

The Department also notes that Mother had previously denied Indian ancestry in Johnathan's dependency proceeding, and the juvenile court in that proceeding concluded Johnathan was not an Indian child. The fact that Mother has now twice denied any Indian ancestry does not relieve the Department of its obligation to inquire of readily ascertainable extended family members whether Baby Boy is an Indian child. Further, the juvenile court's finding in June 2018 at the detention hearing that it had no reason to know Johnathan was an Indian child does not mean Baby Boy is not an Indian child. The juvenile court's finding was made prior to the January 1, 2019 effective date of the 2018 amendment of section 224.2, subdivision (b), by Assembly Bill No. 3176 (Stats. 2018, ch. 833, § 5), which required inquiry of extended family members. Thus, we have no reason to believe the Department inquired of Johnathan's extended family members in making a finding the court had no reason to know Johnathan was an Indian child. And we have no information on what inquiry, if any, was made after the detention hearing (or whether the juvenile court made further findings under ICWA).

The Department attempts to distinguish *In re Y.W., supra,* 70 Cal.App.5th at page 553 on the basis Mother and Father, unlike the mother in *Y.W.*, were not adopted. But our holding in *Y.W.* was not so narrow. (See *In re J.C., supra*, 77 Cal.App.5th at p. 80, fn. 4 ["That the mother in *In re Y.W.* was adopted was all the more reason the Department should have followed up on an obvious lead to locate her biological parents."].) Rather, we explained in *In re Y.W.* that the Department was required to "make meaningful efforts to locate and interview" extended

13

family members, which in the case of the mother in *Y.W.*, included her biological family members. (*Y.W.*, at pp. 552-553.)

The Department also argues that because Mother resided with her family members, inquiry of those family members regarding Indian ancestry was not likely to bear meaningfully on whether Baby Boy was an Indian child, citing to *In re Benjamin M., supra*, 70 Cal.App.5th at page 744. This argument assumes Mother would have discussed her Indian ancestry with her family members. But parents may lack knowledge of a child's Indian ancestry even where the child's extended family members possess strong evidence of the child's possible Indian ancestry. (See *In re S.R.* (2021) 64 Cal.App.5th 303, 314 ["[T]he children's parents apparently had no idea of their family's connection to the Yaqui tribe of Arizona, even though the children's great-grandmother was a member and still lived with the grandparents in Colorado."]; *In re T.G., supra*, 58 Cal.App.5th at p. 289 ["Oral transmission of relevant information from generation to generation and the vagaries of translating from Indian languages to English combine to create the very real possibility that a parent's or other relative's identification of the family's tribal affiliation is not accurate."].) Further, there are many reasons parents may not want to reveal their Indian ancestry, including the parents' fear of being identified as Indian or concern that the tribe may want to participate in the case or assume jurisdiction. (*In re Antonio R., supra*, 76 Cal.App.5th at p. 432.)

The Department's position ignores the express obligation that section 224.2, subdivision (b), imposes on the Department to inquire of a child's extended family members, regardless of whether the parents deny Indian ancestry. "By requiring the Department to inquire of a child's extended family members as to

14

the child's possible Indian ancestry, the Legislature determined that inquiry of the parents alone is not sufficient." (*In re Antonio R., supra*, 76 Cal.App.5th at p. 431; see *In re Y.W., supra*, 70 Cal.App.5th at p. 556 ["the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child" is "to obtain information the parent may not have"].)

The Department also argues that any error in failing to inquire of Mother's and Father's family members was harmless given the Department's questioning of Mother at the arraignment because any inquiry of extended family members was not likely to bear meaningfully upon whether Baby Boy was an Indian child, citing *In re Benjamin M., supra*, 70 Cal.App.5th at page 742. We disagree with the Department's interpretation of the standard for harmless error articulated in *In re Benjamin M.*, which concluded the reviewing court "must reverse where the record demonstrates that the agency has not only failed in its duty of initial inquiry, but where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*Id.* at p. 744.) As we observed in *In re Antonio R., supra*, 76 Cal.App.5th at page 435, "Where the Department fails to discharge its initial duty of inquiry under ICWA and related California law, and the juvenile court finds ICWA does not apply notwithstanding the lack of an adequate inquiry, the error is in most circumstances, as here, prejudicial and reversible. Speculation as to whether extended family members might have information likely to bear meaningfully on whether the child is an Indian child has no place in the analysis of prejudicial error where there is an inadequate initial inquiry. Rather, in

15

determining whether the failure to make an adequate initial inquiry is prejudicial, we ask whether the information in the hands of the extended family members is likely to be meaningful in determining whether the child is an Indian child, not whether the information is likely to show the child is in fact an Indian child." (See *In re Benjamin M.,* at p. 745 ["While we cannot know how Father's brother would answer the inquiry, his answer is likely to bear meaningfully on the determination at issue about his brother."].)

The maternal and paternal extended family members are likely to have meaningful information about whether Baby Boy is an Indian child—regardless of whether the inquiry ultimately reveals he is. The Department's failure in the course of its interviews of the maternal relatives to ask the simple question whether they had any reason to believe Baby Boy was an Indian child is troubling. On remand, the Department must inquire at a minimum of the maternal grandfather, maternal aunt, and maternal uncle. The Department should also use reasonable diligence to locate and interview other extended family members on both the maternal and paternal sides of the family, starting with an inquiry of Mother and Father to identify and provide contact information for the extended family members.

## DISPOSITION

The September 14, 2021 order terminating Mother's and Father's parental rights is conditionally affirmed. We remand for the Department and the juvenile court to comply with the inquiry and notice provisions of ICWA and California law. If the court finds Baby Boy is an Indian child, it shall conduct a new section

16

366.26 hearing, as well as all further proceedings, in compliance with ICWA and related California law.  If not, the court's original section 366.26 orders will remain in effect.


                                                FEUER, J.

We concur:


        PERLUSS, P. J.


        SEGAL, J.